IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| HEATHER D. C. STANART, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.  CIV-15-1388-HE |
| | ) | |
| CAROLYN W. COLVIN, acting | ) | |
| Commissioner Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Heather D. C. Stanart (Plaintiff) brings this action for judicial review of the Defendant Acting Commissioner of Social Security's (Commissioner) final decision that she was not "disabled" under the terms of the Social Security Act.  *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A).  This was the Commissioner's final decision on Plaintiff's November 24, 2010 application for supplemental security income.  *See* Administrative Record (AR) 111.  Chief United States District Judge Joe Heaton has referred the matter to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b).  Doc. 3.

After a careful review of the record, the parties' briefs, and the relevant authority, the undersigned recommends the entry of judgment reversing the

Commissioner's final decision and remanding the matter for further proceedings. *See* 42 U.S.C. § 405(g).

## I. Administrative determination.

### A. Disability standard.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just h[er] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

### B. Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that [s]he can no longer engage in h[er] prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

### C. Relevant findings.

#### 1. The Administrative Law Judge (ALJ) findings.

In reaching his decision that Plaintiff was not disabled within the meaning of the Social Security Act, the assigned ALJ[1] applied the standard regulatory analysis and found Plaintiff:

(1) was severely impaired, first, by status post impingement left shoulder, second, by right shoulder rotator tear, third, by chronic back and shoulder pain, fourth, by degenerative disc disease, and fifth, by osteoarthritis;

(2) had the residual functional capacity[2] (RFC) to perform less than a full range of light work and could occasionally stoop and reach overhead with both arms and frequently handle and finger with both arms;

(3) was able to perform both her past relevant work and, alternatively, jobs existing in the national economy, and so

(4) was not disabled.

AR 102-111; *see* 20 C.F.R. § 416.920(a)(4); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing the sequential process).

---

[1] The case was before the assigned ALJ on remand from the Social Security Administration's (SSA) Appeals Council. AR 194-98. The Commissioner mistakenly states the assigned ALJ's first hearing decision on Plaintiff's application, *id.* at 182-89, is not included in the certified administrative record. Doc. 20, at 2 n.1. Nonetheless, as the Commissioner further notes, *id.*, that decision can have no bearing on the issues here because the Appeals Council vacated it. AR at 195.

[2] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 416.945(a)(1).

### 2. Appeals Council action.

The SSA Appeals Council found no reason to review that decision, so the ALJ's decision is the Commissioner's final decision in this case. AR 1-7.

## II. Judicial review of the Commissioner's final decision.

### A. Review standard.

The court reviews the Commissioner's final "decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks omitted). The court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (internal quotation marks omitted).

### B. Issue for judicial review.

Plaintiff claims legal error, contending the ALJ improperly rejected and weighed the opinions of her treating physician, Joe Witten, D.O. Doc. 14, at 8.

### C. Whether the ALJ failed to apply the correct legal standards in considering the opinions of Plaintiff's treating physician.

#### 1. Legal standards.

Through its governing regulations, the SSA tells claimants that, "[g]enerally, we give more weight to opinions from your treating sources . . . ." 20 C.F.R. § 416.927(c)(2). It explains this is so

> since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations such as consultative examinations or brief hospitalizations.

*Id.* Binding court precedent underscores the significance of treating source opinion evidence, holding that when an ALJ "evaluat[es] the medical opinions of a claimant's treating physician, the ALJ *must* complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011) (emphasis added).

At the first step, the ALJ must determine if the opinion "is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Id.* "If the opinion is deficient in either of these respects, it is not to be given controlling weight." *Id.* If the ALJ finds the opinion is not entitled to controlling weight, he must then proceed to the second step of the inquiry to

5

"make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Id.* These factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1331 (quotation omitted). So long as the ALJ provides a well-reasoned discussion, his failure to "explicitly discuss" all the factors "does not prevent [the] court from according his decision meaningful review." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007*)*.

### 2. Plaintiff's treating physician's opinions.

Plaintiff identifies Joe Witten, D.O., as her treating physician and directs the court to two opinion statements, the first dated November 29, 2011 and the second, June 1, 2012. Doc. 14, at 10-11.

#### a. November 29, 2011 medical opinion evidence.

In a November 29, 2011 medical opinion regarding Plaintiff's ability to do work-related physical activities during an eight-hour workday, Dr. Witten opined Plaintiff could both occasionally and frequently lift and carry less than

ten pounds; could stand and walk for less than two hours; could sit for less than two hours; could sit for twenty minutes before changing position; could stand for thirty minutes before changing position; must walk around every thirty minutes for fifteen minutes; and, would need to lie down two or three times at unpredictable intervals. AR 615. Dr. Witten attributed these limitations to his medical findings of arthralgia, degenerative joint disease, osteoarthritis, general weakness, and chronic back and shoulder pain. *Id.*

In Dr. Witten's opinion, due to the degenerative joint disease in her knees and to her chronic pain and poor mobility, Plaintiff could occasionally twist but could never stoop, crouch, or climb either stairs or ladders. *Id.* at 616. Her poor strength, mobility, and sensation affected her ability to reach, push/pull, handle, and feel. *Id.* Dr. Witten based the latter findings on Plaintiff's general weakness and degenerative joint disease. *Id.*

In addition to noting various environmental limitations, Dr. Witten opined that Plaintiff needed a frequent change in position and that her range of motion in both the upper and lower extremities was extremely limited. *Id.* He believed Plaintiff's impairments or treatment would cause her to be absent from work more than four days every month. *Id.*

### b. June 1, 2012 medical opinion evidence.

On June 1, 2012, Dr. Witten once again gave his opinion regarding Plaintiff's physical abilities and limitations when he completed a Work

7

Tolerance Report at the request of the Oklahoma Department of Human Services. *Id*. at 795-96. Dr. Witten opined that during an eight-hour workday, Plaintiff could both occasionally and frequently lift and/or carry less than ten pounds; could stand and/or walk for less than two hours; could sit for less than six hours; and, could not use her hands for either fine or gross manipulation. *Id*. He cited Plaintiff's chronic back and shoulder pain with bilateral upper extremity pain and weakness and her severe anxiety and panic attacks. *Id*. at 796. He documented his opinion that Plaintiff would never be able to participate in any work activity, noting her severe degenerative joint disease, spinal stenosis, herniated disc disease, and severe anxiety with panic attacks. *Id*.

### 3. The ALJ's assessment of Dr. Witten's medical opinions.

In considering Dr. Witten's 2011 medical opinion, the ALJ recited that "Joe Witten, D.O." stated on November 29, 2011, that "the claimant had the ability to lift and carry less than 10 pounds"; "the claimant could stand and walk or sit for a maximum of two hours during an eight-hour workday"; and "further concluded that the claimant would miss more than four days per month due to her impairment or treatment for those impairments." *Id*. at 106.

The ALJ then "f[ound] that the conclusions of Dr. Witten are inconsistent with the credible evidence of record. In fact his conclusions are inconsistent with his treatment records of the claimant. The [ALJ] therefore assigns little weight to the conclusions of Dr. Witten in Exhibit 14 F." *Id.*

The ALJ's appraisal of Dr. Witten's 2012 medical opinion was much the same:

> Joe Witten, D.O., completed a work Tolerance Report dated November 29, 2011 (Exhibit 25F). Dr. Witten found that the claimant could lift less than 10 pounds on an occasional or frequent basis. He further concluded that the claimant could stand and/or walk with normal breaks for less than two hours in an eight-hour workday. He found that the claimant could sit less than six hours in an eight-hour workday. He found that the claimant could sit for less than two hours in an eight hour workday. The [ALJ] finds that the conclusions of Dr. Witten in Exhibit 25F are inconsistent with the remaining credible evidence of record; and the [ALJ] assigns little weight to his conclusions.

*Id.* at 107.

### 4. The ALJ committed legal error.

The Commissioner, who does not challenge Plaintiff's characterization of Dr. Witten as a treating source,[3] Doc. 20, argues the ALJ "gave legally sufficient reasons for according 'little' weight to Dr. Witten's opinions." *Id.* at 6. Specifically, she states those reasons were "that Dr. Witten's opinions

---

[3] The nearest the ALJ comes to identifying Dr. Witten as Plaintiff's treating physician is in referring to Dr. Witten's "treatment records of the claimant." AR 106.

9

were not supported by his own examination notes and were inconsistent with other record evidence." *Id.* at 9.

### a. Dr. Witten's examination notes.

Before rejecting Dr. Witten's November 2011 opinion that Plaintiff, in part, could lift/carry less than ten pounds; could stand/walk or sit for less than two hours in an eight-hour workday; and, is likely to miss four days of work per month due to her impairments and treatment, AR 106, the ALJ reviewed the medical evidence chronologically and summarized two of Dr. Witten's *multiple* treatment notes:

> On July 1, 2011, Joe Witten, M.D., examined the claimant (Exhibit 9F-2). The claimant's heart had a regular rate and rhythm without murmurs. Her lungs were clear to auscultation. The claimant had multiple areas of tenderness in [her] shoulders, upper and lower back and knees. Dr. Witten diagnosed arthralgias, chronic shoulder and back pain, and onychomycosis. On August 1, 2011, Dr. Witten again examined the claimant (Exhibit 9F-3). His findings remained the same; however, he made the following diagnoses: Chronic back and shoulder pain; spinal stenosis; degenerative joint disease and osteoarthritis; onychomycosis; and insomnia.

*Id.* at 105.

Similarly, before rejecting Dr. Witten's June 2012 opinion that Plaintiff, in part, could lift/carry less than ten pounds; could stand/or walk for less than two hours in an eight-hour workday; and, could sit for less than six hours in an eight-hour workday, *id.* at 107, the ALJ summarized another of Dr. Witten's treatment notes:

10

> On December 5, 2011 Joe Witten, D.O., examined the claimant for follow-up of back pain (Exhibit 15 F). The claimant's heart had a regular rate and rhythm without murmurs. Her lungs were clear to auscultation. Her extremities exhibited no clubbing, cyanosis, or edema. Dr. Witten made the following assessments: Chronic back pain and shoulder pain; degenerative joint disease and osteoarthritis and spinal stenosis; muscle spasms to the lumbar spine; anxiety; tobacco use; insomnia; and sinusitis.

*Id.* at 106.

The ALJ, however, failed to "identify what in Dr. [Witten's] own treatment records he finds inconsistent with [Dr. Witten's] specific opinions in the [medical source] questionnaire, and explain the inconsistency." *Krauser*, 638 F.3d at 1331 n.3. Nor is it apparent to the undersigned. Dr. Witten's findings that Plaintiff suffers from degenerative joint disease, osteoarthritis, and chronic back and shoulder pain "*do* describe medically determinable impairments that could reasonably cause the described limitations." *Langley v. Barnhart*, 373 F.3d 1116, 1120-21, 1119-20 (10th Cir. 2004) (where treating physician opined "that claimant can frequently lift only ten pounds; stand or walk less than one hour in an eight-hour day; sit three hours in a typical day, and can never climb, balance, kneel, crouch, or crawl, and can only occasionally stoop, reach, handle, or finger objects").

### b. Other record evidence.

The ALJ also found Dr. Witten's November 2011 opinions "are inconsistent with the credible evidence of record," AR 106, and his June 2012

11

opinions "are inconsistent with the remaining credible evidence of record . . . ." *Id.* at 107. But the ALJ does not specify the evidence he views as being "credible" or share his methodology.[4] Instead, the ALJ summarized other medical evidence of record—both objective and opinion— and left it to the court to sift through his synopses and to guess at his reasoning. *Id.* at 104-07. And, without "mean[ing] to suggest that there are not conflicts in the medical evidence," *Langley*, 373 F.3d at 1121—particularly as to the opinions of non-examining physicians—the ALJ's summaries of the evidence include various consistent findings, for example, an "internal derangement of the right shoulder, possible labral tear," AR 104; a "decrease in the hip range of motion and shoulder range of motion," *id.*; "a decreased range of motion in the back," *id.*; "suffer[s] from lower back pain/probably degenerative disc disease," *id.* at 105; "left shoulder . . . tenderness to palpation over the acromioclavicular joint," *id.*; "suffer[s] from lumbar degenerative disc disease and right AC joint tear," *id.*; "tender in the lumbrosacral junction with flexion," *id.* at 106; "bilateral shoulder pain, *id.*; "[m]edial meniscus tear right knee [and] coccyx fracture," *id.* at 107; and, "right shoulder rotator cuff tear." *Id.*

---

[4] The ALJ, for example, weighed only Dr. Witten's opinion evidence. AR 104-07.

The ALJ's findings that Dr. Witten's opinions are inconsistent with "credible evidence of record," *id.* at 106, 107, are inherently opaque conclusions further clouded by undefined terminology. The ALJ's "decision 'must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion *and the reasons for that weight.*'" *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting SSR 96-2p, 1996 WL 374188, at *5) (emphasis added). "[T]he ALJ did not follow the correct legal standards in considering Dr. [Witten's] opinions[s] . . . ." *Langley*, 373 F.3d at 1123.

### III. Recommendation and notice of right to object.

The undersigned recommends the entry of judgment reversing the Commissioner's final decision and remanding the matter for further proceedings.

The undersigned advises the parties of their right to file an objection to this Report and Recommendation with the Clerk of Court by November 28, 2016, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). The undersigned further advises the parties that failure to make a timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 7th day of November, 2016.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE